UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAREN HYLES,<br><br>                 Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                 Defendant. | CASE NO. C16-0245-RSM-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Karen Hyles proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1972.[1] She completed high school and some college, and previously worked as a home health care aide, security guard, and in fast food. (AR 40, 56.)

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION
PAGE - 1

Plaintiff protectively filed for benefits in February 2013, alleging disability beginning February 1, 2013. (AR 204-13.) Her applications were denied initially and on reconsideration.

On July 22, 2014, ALJ M.J. Adams held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 37-61.) On August 26, 2014, the ALJ issued a decision finding plaintiff not disabled. (AR 19-31.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on December 24, 2015 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had worked after the alleged disability onset date, but that the work activity did not rise to the level of substantial gainful activity. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's fibromyalgia, spinal disorder, obesity, affective disorder, anxiety disorder, and somatoform disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to

perform light work with some additional limitations: she can lift or carry twenty pounds occasionally and ten pounds frequently; she can stand with usual breaks and walk for six hours in an eight-hour workday and sit with usual breaks for six hours; she can frequently climb ramps or stairs, balance, stoop, kneel, or crouch, and occasionally climb ladders, ropes, or scaffolds; and she must avoid concentrated exposure to hazards or unprotected heights. The ALJ found plaintiff retains the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: she can make judgments on simple and detailed or complex work-related decisions required of jobs up to the semi-skilled level; can respond appropriately to supervision, co-workers, and deal with occasional changes in the work environment; and has no difficulty dealing with the public. With that assessment, and with the assistance of the VE, the ALJ found plaintiff able to perform her past relevant work as a fast food worker and security guard.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Having found plaintiff capable of performing past relevant work, the ALJ did not proceed to step five.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting medical source and other source opinions, in rejecting her testimony, and in finding she could perform past relevant work. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical and Other Source Opinions</u>

In evaluating the weight to be given to opinion evidence, Social Security regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers and non-medical sources are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (d), 416.913(a) and (d), and Social Security Ruling (SSR) 06-03p.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

REPORT AND RECOMMENDATION
PAGE - 4

Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of such opinions, SSR 06-3p, and the ALJ may discount the evidence by providing reasons germane to each source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also* SSR 06-03p (ALJ should explain weight given to other source opinions or otherwise ensure that discussion of the evidence allows for following the ALJ's reasoning "when such opinions may have an effect on the outcome of the case.")

Plaintiff here challenges the ALJ's assessment of medical opinions and the opinion of a vocational rehabilitation counselor. Because the record contained contradictory opinions, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of acceptable medical sources, as well as germane reasons in relation to the other source.

A.   Dr. Raymond West

Dr. Raymond West examined plaintiff in April 2013. He found little to account for self-imposed standing and walking limitations, "other than moderately severe tenderness to superficial and deep palpation of muscle bundles throughout both upper quadrants[,]" and noted "questionably positive straight leg raising and limitation of squatting because of pain in the knees." (AR 406.) Dr. West assessed plaintiff as able to stand and walk for up to five or six hours in an eight-hour day, "provided she is able to take frequent breaks[,]" and able to sit up to six hours in a comfortable chair, provided "she is able to move about for short periods from time to time." (*Id.*) Noting her intermittent use of a cane, and with consideration of her fibromyalgia and back and leg pain, Dr. West believed the cane "is desirable, at least on 'bad days.'" (*Id.*) He found plaintiff able to lift and carry twelve-to-fifteen pounds at least occasionally and across a room, able to bend at least occasionally, and limited in squatting, kneeling, crawling, climbing,

REPORT AND RECOMMENDATION
PAGE - 5

pushing, pulling, and balancing to urgencies only.

The ALJ found Dr. West thoroughly evaluated plaintiff's physical functioning, based his opinions on objective findings, rather than subjective reports, and made his conclusions more convincing through the notation of inconsistencies in plaintiff's presentation. (AR 28.) He did not adopt the fifteen-pound lifting limitation, find the longitudinal record to support the use of a cane on bad days, or construe the examination findings to support limitations in postural movements to urgencies only. However, the ALJ otherwise found the assessment consistent with the findings and record as a whole, and gave the opinion great weight.

Plaintiff describes the rejection of the limitations in lifting, postural movements, and use of a cane as impermissibly vague. As she observes, an ALJ must do more than merely state his conclusions; he must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). *See also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.") However, in this case, the ALJ did more than simply state his conclusion; he thoroughly discussed the medical evidence of record, including a prior, detailed discussion of Dr. West's findings and observations on examination. (*See* AR 26.) His rejection of these particular limitations has the support of substantial evidence. *See, e.g., Reddick*, 157 F.3d at 725 ("The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.")

Plaintiff also avers error in the ALJ's failure to address other aspects of Dr. West's evaluation. The ALJ did not, for example, adequately address Dr. West's opinion that plaintiff

REPORT AND RECOMMENDATION
PAGE - 6

needed to take frequent breaks from standing and walking, and needed to move about from time to time when sitting.  (AR 406.)  The RFC included limitations in standing, walking, and sitting "with the usual breaks" in an eight-hour day.  (AR 24.)  At hearing, the VE defined "usual breaks" as "three breaks during the day, 15 minutes in the morning, half an hour in the afternoon and 15 minutes in the afternoon."  (AR 58.)

As the Commissioner observes, the ALJ bears the responsibility of "translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r*, *SSA*, 807 F.3d 996, 1006 (9th Cir. 2015).  *See also* SSR 96-5p (the "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner."); *accord* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).  It is also true that an RFC finding need not directly correspond to a specific medical opinion, *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012), and that an ALJ may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician, *see Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

Dr. West did not define "frequent" in assessing limitations in plaintiff's ability to stand and walk.  Nor did Dr. West identify a more specific limitation in the need to "move about" from a sitting position "from time to time."  A more specific limitation could have entailed, for example, the need for a "sit/stand" option.  To the extent there was a lack of clarity in Dr. West's opinions, the ALJ arguably should have contacted this physician for clarification.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered."; "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an

REPORT AND RECOMMENDATION
PAGE - 7

appropriate inquiry.'") (quoted sources and quotation marks omitted).

Nor is it clear the ALJ translated and incorporated the unaddressed aspects of Dr. West's opinions into the RFC. The ALJ, instead, appeared to reject the opinions by assessing plaintiff as able to stand, walk, and sit "with the usual breaks" in an eight-hour day. Having rejected several other limitations assessed by Dr. West and having otherwise afforded this physician's opinions great weight, the Court finds the ALJ's consideration of Dr. West's opinions insufficient. The ALJ should, on remand, specifically address Dr. West's opinions on all of the limitations in plaintiff's ability to stand, walk, and sit.

B.      Dr. Alan Breen

Dr. Allen Breen evaluated plaintiff in July 2014. (AR 529-37.) He conducted a number of tests and described his conclusions:

> In regard to neurocognitive functions, she is functioning in the low average range of intellectual abilities with very poor adaptive problem solving and abstraction. There are significant problems with attention and concentration. The other dataset indicates somewhat better academic skills than expected. There is poor motor function due to the pain situation. Memory scores are poor as well, in general, although she benefits a bit from repetition.
>
> Overall the data suggest that she may very well be an appropriate candidate for disability given her significant physical and cognitive problems.
>
> The current data set does raise the possibility of some residual impact of the multiple blows to the head. It is also worth noting that the gabapentin may be contributing to some of the cognitive difficulties as well. These data would suggest the likelihood of some preexisting problems, although there is likely an exacerbation of these difficulties because of the neurocognitive insults.

(AR 535.) Dr. Breen agreed that plaintiff's desire for a light duty job that is organized and did not require a lot of thought seemed appropriate, thought a low physical demand, low stress job

REPORT AND RECOMMENDATION
PAGE - 8

would be best, and that the "key point would be to get her in a situation where the tasks are relatively routine, don't require a lot of physical activity, and where she has some ability to manage her workspace." (AR 536.) Dr. Breen further opined:

> I think part-time rather than full-time work is more appropriate given her pain situation. In light of all of the cognitive problems, she will need a great deal of teaching, on-the-job training, and support. She is going to need notes, manuals, and other written materials to supplement her memory. The key point is getting her started in the simple direct way building on new tasks as she gets experience. I am not really sure she is going to be able to handle a half-time job physically so a consultation with pain physicians would be appropriate. It is not clear she is on an appropriate pain regimen.

(*Id*.) Also, if plaintiff failed in her appeal to obtain disability benefits: "I think she should look into reopening this on the appeal with this additional data because I don't think she is capable of full-time competitive employment based upon this assessment and history." (*Id*.)

As described in the ALJ's decision: "Dr. Breen's testing found some cognitive limitation but he opined that she can return to the work force and can perform work that is 'organized and doesn't require a lot of thought' and low stress. Dr. Breen noted that she has some skills and could do routine work with proper training." (AR 27.) The ALJ found these findings generally consistent with the assessments of the non-examining State agency psychological consultants, and pointed to treatments records/clinical observations as reflecting a longitudinal record indicating plaintiff's baseline symptoms are not as severe as she reported to either Dr. Breen or Dr. Margaret Dolan, the latter of whom examined plaintiff in April 2013 (*see* AR 387-95).

The ALJ subsequently afforded some weight to Dr. Breen's assessment. He explained:

> I note that the results of intellectual testing found more severe limitations than are found elsewhere in the record, which suggests that these findings are not reflective of her baseline intellectual

REPORT AND RECOMMENDATION
PAGE - 9

> functioning. In addition, Dr. Breen's conclusion that the claimant is incapable of full-time employment is given no weight, and I do not adopt his conclusion that the claimant would require extra training and a supportive work environment. These findings are inconsistent with the record as a whole, including the claimant's recent work activity (which did not end due to mental health concerns) and her attending school.

(AR 29.)

It is not clear, however, that the ALJ fully accounted for the longitudinal evidence of record. (*See, e.g.*, AR 425 (blunted affect); AR 431 (flat affect, anhedonia, does not behave appropriately for age); AR 433, 436 (flat affect, anhedonia, does not behave appropriately for age, deficient fund of knowledge, forgetful, severely impaired remote memory, poor insight, and poor judgment; consultation with psychiatrist found warranted given memory loss and other mental health concerns); AR 467 (flat affect); AR 486 (depressed affect); AR 421 (poor eye contact, responds to questions slowly, affect blunted and flat); AR 480 (depressed mood with constricted affect and preoccupation with pain and its personal limitations); AR 525 (report of being forgetful).[2] While the ALJ largely cites to observations and assessments made in the context of routine office visits (*see* AR 27, 29), Dr. Breen rendered opinions as a specialist and based on the results of an extensive battery of tests and a comprehensive neuropsychological evaluation. Other examining physicians identified some findings consistent with those of Dr. Breen. (*See* AR 443, 445 (Dr. Helleckson: depressed mood, with depressed facies, and mild psychomotor retardation; recalled zero out of three objects in five minutes); AR 456, 458-59 (Dr. Clark: orientation, attention, and concentration impaired; reduced production in speech observed; sad/depressed mood; insight poor); AR 390-395 (Dr. Dolan: some possible psychomotor

---

[2] Several citations to the record identified by the Commissioner are duplicates of the above. (*See* AR 490, 496, 501.)

retardation, clearly preoccupied by pain; "does seem to have some cognitive confusion."; finding either depression or separate cognitive condition interfering with ability to utilize treatment effectively and "strongly suggest[ing]" more intense counseling and case management; "confused about very basic matters", complained about memory problems "which seem more like confusion", preoccupied with internal concerns-pain).  (*See also* AR 73, 116 (nonexamining psychologists assessed moderate difficulties in maintaining concentration, persistence, and pace and ability to complete a normal workday and workweek).)

In addition, while affording some weight to Dr. Breen's opinions, it is not clear how the ALJ incorporated that weight assignment into the RFC.  The ALJ, for example, found Dr. Breen's opinion that plaintiff could perform work that is organized, does not require a lot of thought, and is low stress generally consistent with the assessments of the State agency psychologists, but did not adopt any associated RFC limitation other than the ability to deal with occasional changes in the work environment. (*See* AR 25, 27.)  Nor is it clear whether the ALJ, in rejecting Dr. Breen's opinion that plaintiff would require extra training and a supportive work environment, considered plaintiff's report that her prior work as a home health aide allowed her to work irregular hours and to take more rest periods, have fewer or easier duties, and produce less work than other employees.  (*See* AR 236.)

The Court, in sum, finds the ALJ's consideration of the opinion evidence from Dr. Breen insufficient.  The ALJ should reconsider this opinion evidence on remand.

C.     Joan Lopez-Stuit

Joan Lopez-Stuit, a vocational rehabilitation counselor for the Division of Vocational Rehabilitation (DVR), conducted a vocational assessment of plaintiff beginning in June 2014 and closed plaintiff's case in early August 2014 as "'unable to benefit from services.'"  (AR 538.)  In

REPORT AND RECOMMENDATION
PAGE - 11

a letter, Lopez-Stuit described problems plaintiff had during a clerical assignment, including difficulty staying awake long enough to tolerate even a two-hour shift, increased pain due to activity, inability to alphabetize, poor attention to detail and inability to remember any directions without a detailed "'to do list'." (*Id*.) The community based assessment evaluator ended the clerical assignment after two weeks and requested a neuropsychological evaluation to consider a head injury.

Lopez-Stuit thereafter described Dr. Breen's diagnoses and opinions as indicating plaintiff "is unable to work on a full-time basis due to the combination of factors" identified, including pain and mild cognitive impairments related to trauma, and his estimation that, due to physical complaints, plaintiff "would not even be able to work part-time." (*Id*.) Lopez-Stuit opined that plaintiff is unable to work at gainful employment, closed her case due to the combination of "mental and physical disabilities impeding her ability to benefit from DVR services[,]" and stated: "It is possible that, vocational rehabilitation will be able to slowly assist her in training to gain appropriate part-time employment but this process will take more than a year and will not lead to gainful employment. Please grant her Social Security so that she can support herself while attempting to rehabilitate." (*Id*.)

The ALJ found Lopez-Stuit's interpretation of Dr. Breen's evaluation "twisted and irresponsible." (AR 29.) He stated:

> Dr. Breen's comment that the claimant should start in part-time work is not a strict limit on her abilities, but instead is a suggestion for a pathway to return to the workforce. Therefore, it directly contradicts Ms. Lopez-Stuit's assertion that the claimant is totally unable to work. It appears that Ms. Lopez-Stuit is most interested in closing the claimant's DVR case rather than providing the services recommended by Dr. Breen and helping the claimant return to the workforce. For these reasons, I give no weight to her report.

REPORT AND RECOMMENDATION
PAGE - 12

(*Id.*)

Lopez-Stuit's description of Dr. Breen's opinion is not reasonably described as twisted and irresponsible. Nor are the opinions of Lopez-Stuit and Dr. Breen reasonably construed as directly contradictory. For example, Lopez-Stuit, like Dr. Breen, did not foreclose a pathway for plaintiff to return to the workforce; she indicated the possibility that vocational rehabilitation would, over time, allow plaintiff to return to at least part-time work. (AR 538.) The ALJ likewise did not provide a reasonable explanation for his conclusion that Lopez-Stuit was motivated by a concern to close plaintiff's case. It is clear, for example, that Lopez-Stuit considered more than Dr. Breen's report and her own counseling experience; she also considered the specific problems plaintiff encountered during the community based assessment. (*See id.*)

The Commissioner suggests that, even if the ALJ's reasoning was insufficient, he could have found Lopez-Stuit's opinion regarding plaintiff's inability to work to have intruded upon a decision reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Yet, the ALJ did not offer that reasoning for the Court's consideration. The Court herein reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases…")). The ALJ should, for the reasons stated above, reconsider the evidence from Lopez-Stuit on remand.

D. <u>Dr. Margaret Dolan</u>

Dr. Dolan, in April 2013, diagnosed plaintiff with a mood disorder, chronic pain syndrome, and, provisionally, a cognitive disorder, assessed a Global Assessment of Functioning

REPORT AND RECOMMENDATION
PAGE - 13

(GAF) score of 40,[3] and described the prognosis as guarded.  Dr. Dolan thought it was possible plaintiff could return to work with treatment of depression and pain.  (AR 393-94.)  She described confusion in plaintiff's reporting and observations, and speculated this could be due to depression or menopause, while adding: "However, if her symptoms are due to some cognitive disorder, her prognosis is poor.  I do not think she is malingering or attempting to mislead about her symptoms."  (AR 394.)  She found plaintiff's chronic pain and disorders insufficiently treated, stated either depression or a separate cognitive condition was interfering with her ability to utilize treatment effectively, and strongly suggested more intense counseling or case management.

In assessing plaintiff's ability to reason, Dr. Dolan noted plaintiff was "confused about very basic matters", including her medication regimen and the location of Dr. Dolan's office, and stated a "home health aide who doesn't keep track of medication cannot do her job."  (AR 395.)  With respect to understanding and memory, Dr. Dolan found complaints about memory problems "seem more like confusion" and would interfere with work.  (*Id*.)   He did not find sustained concentration and persistence a severe problem, but found her "preoccupation with internal concerns-pain, increasing feeling of vulnerability and helplessness" could interfere with ability to focus.  (*Id*.)  He did not find any social limitations and, with respect to adaptation, noted plaintiff had functioned independently for years, but was currently "feeling (and may well

---

[3] The prior version of the Diagnostic and Statistical Manual of Mental Disorders (DSM) considered a GAF between 31 and 40 as describing "[s]ome impairment in reality testing or communication" or "major impairment in several areas."  DSM-IV-TR 34 (4th ed. 2000). The most recent version of the DSM does not include a GAF rating for assessment of mental disorders.  DSM-V 16-17 (5th ed. 2013).  *See also* Administrative Message 13066 ("AM-13066") (while the SSA will continue to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis).

REPORT AND RECOMMENDATION
PAGE - 14

be) overwhelmed and unable to meet the demands of work and maintaining her home." (*Id.*)

The ALJ described some of Dr. Dolan's testing results, including the ability to spell "world" forward and backward, count backward by threes, and complete a three-step command. (AR 27.)  He acknowledged the finding plaintiff had some problems with confusion, but found the opinions regarding concentration and persistence and social functioning generally consistent with various aspects of the record and supporting the RFC.  He accorded Dr. Dolan's assessment some, but not great weight.  The ALJ found examination findings showed some limitations, but generally average intellectual functioning, did not support the assessed GAF and guarded prognosis, and suggested Dr. Dolan relied heavily on plaintiff's subjective reports, which the ALJ did not find entirely reliable.  (AR 28-29.)

An ALJ may properly reject a physician's opinions where they are inconsistent with the physician's own examination findings.  *Morgan v. Comm'r of SSA*, 169 F.3d 595, 603 (9th Cir. 1999).  An ALJ may also reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan*, 169 F.3d at 602).  There is, in this case, some basis for the ALJ's rejection of Dr. Dolan's opinions for these reasons.  However, as elsewhere in the decision, the ALJ failed to sufficiently consider the information pertaining to plaintiff's confusion and any cognitive issues.  The ALJ should, on remand, reconsider and specifically address all of Dr. Dolan's opinions, including any limitations in plaintiff's ability to reason and in her understanding and memory.

E.   Dr. Vincent Gollogly and Dr. Eugene Kester

The ALJ accorded significant weight to the opinions of nonexamining State agency psychologists Drs. Vincent Gollogly and Eugene Kester.  He found their opinions consistent with

REPORT AND RECOMMENDATION
PAGE - 15

the findings of evaluating physicians, the treatment record, and plaintiff's reported activities, and overall supporting the conclusion plaintiff can work within the parameters of the assessed RFC. (AR 26, 28.) Plaintiff objects to the weight assigned these opinions and notes they were rendered in May and August 2013 (AR 86, 113), without review of the evidence from Dr. Breen and Lopez-Stuit. Given errors in the review of other medical opinion evidence, the Court agrees with plaintiff that reconsideration of the opinions of the State agency psychologists is warranted.

## Plaintiff's Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[4] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ here concluded plaintiff's medically determinable impairments could possibly cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely credible. The Court, while not finding error in every aspect of the ALJ's credibility assessment, concludes that the above-described errors necessitate further consideration of plaintiff's testimony on remand. For example, further consideration of the medical evidence of record could implicate the ALJ's conclusion that the treatment records are inconsistent with or do not support plaintiff's testimony as to the extent of

---

[4] In SSR 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. This change is effective March 28, 2016 and not applicable to the August 2014 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

REPORT AND RECOMMENDATION
PAGE - 16

her limitations. (*See* AR 25-27.) The ALJ should also consider whether the record contains evidence explaining any gaps in treatment, such as a lack of insurance coverage and/or implications of a cognitive problem, *see* SSR 82-59 and 96-7p, as well as whether there is any association between plaintiff's severe somatoform disorder and the evidence relied upon as showing a disability conviction (*see* AR 28).

### Steps Four and Five

The errors identified above potentially implicate the ALJ's RFC assessment and step four conclusion as to past relevant work. On remand, the ALJ should reconsider plaintiff's claim at step four and, as may be needed, at step five.

### **CONCLUSION**

For the reasons set forth above and as requested by plaintiff, this matter should be REMANDED for further administrative proceedings.

### **DEADLINE FOR OBJECTIONS**

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will

/ / /

/ / /

/ / /

/ / /

be ready for consideration by the District Judge on **December 2, 2016**.

DATED this 16th day of November, 2016.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 18